**This order is SIGNED.**


**Dated: May 9, 2024**



**PEGGY HUNT**
**U.S. Bankruptcy Judge**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re:<br><br>AEROSPACE ENGINEERING &<br>SUPPORT, INC.,<br><br>      Debtor. | Bankruptcy Case No. 23-22868<br><br>Chapter 11 (under Subchapter V)<br><br>Honorable Peggy Hunt |

### MEMORANDUM OF OPINION

The Court is presented with issues involving the burdens of proof applicable to the allowance of a proof of claim that does not establish a claim against the Debtor, and whether the automatic stay applies to a state court action against persons who received potentially avoidable transfers from the Debtor. These issues arise out of two matters: (1) an *Objection to Proof of Claim No. 6 of Systems Implementors, Inc.* (the "**Claim Objection**"),[1] filed by the Debtor seeking to disallow the *Proof of Claim* (the "**POC**")[2] of Systems Implementors, Inc. ("**SI**"); and (2) SI's *Motion for Relief From Stay* (the "**Stay Relief Motion**"),[3] seeking (i) relief from the automatic stay pursuant to Section 362(d)(1) of title 11 of the United States Code (the "**Bankruptcy Code**")[4] to continue a lawsuit against the Debtor in state court, and (ii) authority to continue the state court action against non-debtors on the basis that Section 362(a) does not

---

[1] Dkt. No. 169.
[2] Claim Dkt. No. 6-1.
[3] Dkt. No. 80.
[4] 11 U.S.C. § 101 *et seq*. Unless otherwise stated, all statutory references herein are to the Bankruptcy Code.

apply or, alternatively, because there is cause to lift the stay under Section 362(d)(1). Notice of both matters was properly served and no further notice is required.[5] Both matters are contested.[6]

The Court hereby enters this *Memorandum of Opinion* to memorialize a ruling made on the record at a hearing on April 25, 2024.[7] For the reasons set forth below, the Debtor's Claim Objection is overruled because although SI's POC is flawed, SI has met its ultimate burden of establishing an allowable general unsecured claim against the Debtor under Section 502(b) of the Bankruptcy Code in the amount of $1,427,620.47. Allowance of SI's POC means it need not return to state court to liquidate its claim against the Debtor and therefore the portion of its Stay Relief Motion applicable to the Debtor is moot. The portion of the Stay Relief Motion applicable to the non-debtors is denied in part and granted in part subject to the conditions set forth herein.

## I.    JURISDICTION AND VENUE

The Debtor filed a petition seeking relief under Subchapter V of Chapter 11 of the Bankruptcy Code on July 7, 2023 (the "**Petition Date**"). The Court has jurisdiction of the Debtor's case and over the present contested matters under 28 U.S.C. §§ 157(a)(1) and 1334, and the District Court's Order of Reference at DUCiv R 83-7.1. These matters "arise under" the Bankruptcy Code and "arise in" the Debtor's case and, thus, are core proceedings in which the Court has authority to enter final orders and judgments.[8] These matters are also core proceedings under 28 U.S.C. § 157(b)(2)(A), (B), (G) and (O). Venue of the Debtor's case is not contested and is proper under 28 U.S.C. § 1408.

---

[5] *See* Dkt. Nos. 81, 170.
[6] *See* Dkt. Nos. 175 ("**Claim Obj. Resp.**"); 104 ("**Stay Relief Obj.**"); 105; 111; 160 ("**SI Supp. Brief**"); 168.
[7] This *Memorandum of Opinion* is the Court's findings of fact and conclusions of law entered pursuant to Fed. R. Civ. P. 52(a)(1), made applicable by Rules 7052 and 9014(c) of the Fed. R. Bankr. P. The findings of fact herein are deemed, to the extent appropriate, to be conclusions of law, and the conclusions of law herein are similarly deemed to be findings of fact and shall be equally binding as both.
[8] 28 U.S.C. § 157(b)(1).

## II.    FINDINGS OF FACT

The relevant facts are undisputed.

### Corporate Structure of Relevant Entities

The Debtor, a Utah corporation,[9] states that prior to the Petition Date it was involved in a business venture with Aerospace Engineering Spectrum (AES), Ltd. ("**Spectrum**").[10] Spectrum is a Utah limited partnership.[11] The Debtor admits that it is a general partner of Spectrum.[12]

### The Spectrum Judgment

Spectrum was awarded a contract by the United States Air Force (the "**AF Contract**"), and it subcontracted with SI to perform some of the services required under the AF Contract (the "**Subcontract**").[13] In August 2018, SI commenced a lawsuit against Spectrum in Utah state court alleging Spectrum breached the Subcontract (the "**Breach Action**").[14] SI and Spectrum thereafter executed a *Confidential Forbearance and Settlement Agreement* (the "**SI/Spectrum Settlement Agreement**") in June 2019 under which Spectrum agreed to pay SI over $1.7 million in installments.[15] Spectrum also executed a *Verified Confession of Judgment* that SI could file if Spectrum failed to make the required payments.[16]

---

[9] Claim Obj., ¶ 2.
[10] Dkt. No. 45 (Statement of Financial Affairs, ¶ 25.1); Claim Obj., ¶ 4.
[11] Claim Obj., ¶ 1.
[12] Dkt. No. 178 (Hearing on Claim Obj., Feb. 6, 2024).
[13] Stay Relief Motion, ¶ 2; Stay Relief Obj., ¶ 2; Claim Obj., ¶ 5; Claim Obj. Resp., Exh. 5.
[14] *See* Stay Relief Motion, ¶ 2; Stay Relief Obj., ¶ 2; Claim Obj., ¶ 9; Claim Obj. Resp., ¶ 2 (citing POC, Part 2, p. 22, ¶¶ 27–28); *see* POC, Part 2, pp. 17–39.
[15] Stay Relief Motion, Exh. A at pp. 6–7, ¶ 32–33; Claim Obj., ¶ 11; Claim Obj. Resp., ¶ 3 (citing POC, Part 2, pp. 11–16); Claim Obj. Resp., Exh. 5.
[16] Stay Relief Motion, Exh. A at pp. 6–7, ¶ 32–33; Claim Obj., ¶ 12; Claim Obj. Resp., ¶ 4 (citing POC, Part 2, pp. 11–16); Claim Obj. Resp., Exh. 5.

Spectrum defaulted on its payment obligations under the SI/Spectrum Settlement Agreement,[17] and in December 2019, SI filed the Verified Confession of Judgment in the Breach Action. The state court entered an *Order and Entry of Judgment* in favor of SI and against Spectrum in the principal amount of $788,640.37 in February 2020 (the "**Spectrum Judgment**").[18]

### Transfers of AF Contract Funds

According to SI, Spectrum transferred funds it received under the AF Contract to the Debtor between 2017 and August 2018—when the Breach Action was filed—and after the filing of the Breach Action through December 4, 2019 (the "**Transfers**").[19] The Debtor does not contest that Spectrum made some or all of the Transfers, stating that it managed Spectrum's finances and that Spectrum "transferred the money to Debtor" when it was paid under the AF Contract.[20]

### SI's Collection Action

SI was unable to collect the Spectrum Judgment from Spectrum. In August 2020, after engaging in post-judgment discovery, SI commenced a lawsuit in Utah state court (the "**Collection Action**")[21] against Spectrum, the Debtor and, among others, Daniel Florence, Rusty Oram and entities allegedly owned or controlled by Mr. Florence and/or Mr. Oram (collectively, the "**Non-Debtor Defendants**").[22]

---

[17] Stay Relief Motion, Exh. A at p. 6, ¶ 27; Claim Obj., ¶ 14; Claim Obj. Resp., ¶ 5 (citing POC, Part 2, pp. 22–23, ¶¶ 32–40); Claim Obj. Resp., Exh. 5.

[18] Stay Relief Motion, ¶ 3; Stay Relief Obj., ¶ 3; Claim Obj., ¶ 15; POC, Part 2, p. 9; Claim Obj. Resp., ¶ 6; Claim Obj. Resp., Exh. 5.

[19] Claim Obj. Resp., Exh. 3. Dkt. No. 134 (Continued Hearing on Stay Relief Motion, Nov. 7, 2023).

[20] Claim Obj., ¶ 19.

[21] *Sys. Implementers, Inc. v. Aerospace Eng'g Spectrum (AES) Ltd. et al.*, Case No. 200904967 (Utah 2d Jud. D. Ct.); *See* Stay Relief Motion, Exh. B.

[22] Stay Relief Motion, ¶¶ 10–11 & Exhs. A, B; Stay Relief Obj., ¶¶ 4–11; Claim Obj., ¶ 20.

SI alleges as part of the Collection Action that the Debtor and the Non-Debtor Defendants are liable to SI for amounts owed under the Spectrum Judgment based on four sets of claims (collectively, the "**Collection Claims**") as follows:

**UVTA Claims.** As a creditor of Spectrum, SI asserts that it may recover amounts owed to it under the Spectrum Judgment by avoiding the Transfers that Spectrum made to the Debtor under the Utah Uniform Voidable Transactions Act (the "**UVTA**")[23] and recovering the Transfers from the Debtor as the first transferee and/or the Non-Debtor Defendants as immediate or mediate transferees.[24]

**LPA Claim**. SI seeks a declaratory judgment that the Debtor, as Spectrum's general partner, is jointly and severally liable for the Spectrum Judgment under the Utah Uniform Limited Partnership Act (the "**LPA**").[25]

**Alter Ego Claim**. SI seeks a judgment declaring the Debtor and Spectrum are alter egos, making the Debtor liable for the Spectrum Judgment.[26]

**Assumption of Liability Claim**. SI asserts that the Debtor assumed Spectrum's debts to SI.[27]

### The Debtor's Bankruptcy Case

SI's Collection Action was stayed pursuant to Section 362(a) of the Bankruptcy Code on July 7, 2023, when the Debtor filed a petition seeking relief under Subchapter V of Chapter 11,

---

[23] Utah Code Ann. § 25-6-101 *et seq*.
[24] *Id.* § 25-6-304; *see* Stay Relief Motion, Exhs. A, C; Claim Obj. Resp., ¶ 14; *see* POC, Part 2, pp. 17–85, 97–126, 140–221.
[25] Utah Code Ann. § 48-2e-101 *et seq*. *See* Stay Relief Motion, Exhs. C, D.
[26] Stay Relief Motion, Exhs. A, C; Claim Obj. Resp., ¶ 18 (citing POC, Part 2, pp. 37–38).
[27] SI moved to amend its Complaint in the Collection Action to include the Assumption of Liability Claim and that motion was pending on the Petition Date. *See* Stay Relief Motion, Exhs. B, D; POC, Part 2, pp. 86–163.

thus commencing the present case. A trial date had not been set by the state court in the

Collection Action as of the Petition Date, but approximately one month prior, fact discovery had

concluded, and expert discovery had commenced.[28]

SI is one of the Debtor's largest unsecured creditors.[29] Schedule E/F lists SI as a creditor

holding a disputed, general unsecured claim in the amount of $591,000.[30] The Debtor represents

this listing was the amount the Debtor was carrying on its books for Spectrum's debt to SI, but

that the debt is disputed.[31]

The Debtor has proposed a plan under Subchapter V of Chapter 11. At the request of the

United States Trustee, the proposed plan has been or will be amended to include provisions

vesting Chapter 5 avoidance claims in a post-confirmation trust to be administered by a trustee.[32]

## SI's Proof of Claim

SI timely filed a *Proof of Claim* against the Debtor using Official Form 410, asserting a

general unsecured claim in the amount of $1,427,620.47.[33] The face of the POC states that the

basis for SI's claim is "Utah Code Ann. Section 48-2e-404(1); UCA 25-6-202, 203; & other."[34]

Attached to the POC are 463 pages of documents that are not tabbed, summarized, or described

(the "**Claim Attachment**").[35]

---

[28] Stay Relief Motion, ¶¶ 12–13; Stay Relief Obj., ¶¶ 12–13.
[29] *See* Dkt. No. 2.
[30] Dkt. No. 45 (Schedule E/F, ¶ 3.56).
[31] Dkt. No. 178 (Hearing on Claim Obj., Feb. 6, 2024).
[32] Dkt. Nos. 171 (*Plan of Reorganization*), 205 (*United States Trustee's & Debtor's Stipulation Regarding Debtor's Motion for Order Fixing Deadlines and Procedures in Subchapter V Case for Solicitation of Chapter 11 Plan of Reorganization Dated January 19, 2024 (Dkt. 197)*).
[33] Claim Dkt. No. 6-1.
[34] POC, ¶ 8.
[35] Citations to the Claim Attachment are to POC, "Part 2."

There is nothing on the face of the POC or in the Claim Attachment showing an unliquidated, noncontingent claim against the Debtor. Rather, the first page of the Claim Attachment is designated as a "Claim Amount Breakdown" outlining SI's claim against Spectrum as of the Petition Date. Copies of the Spectrum Judgment, the SI/Spectrum Settlement Agreement and a calculation of SI's claim against Spectrum are included in the early pages of the Claim Attachment.[36] The remaining documents that comprise the Claim Attachment are a hodgepodge of documents that appear to be related to the Collection Action, with no context of why they are attached.

### The Stay Relief Motion and the Claim Objection

SI filed the Stay Relief Motion seeking relief to allow it to continue litigating the Collection Action in state court against the Debtor and Non-Debtor Defendants which was opposed by the Debtor.[37] A preliminary hearing on the Stay Relief Motion was held on October 3, 2023. Counsel made argument and representations on the record. The hearing was continued to November 7, 2023, and thereafter the parties filed *Supplemental Briefs* as requested by the Court.[38]

Concurrent with the filing of its Supplemental Brief, the Debtor filed the Claim Objection, objecting to SI's POC because, among other things, the Claim demonstrates that SI has a claim against Spectrum, but not the Debtor.[39] SI filed a *Response* to the Claim Objection (the "**Claim Objection Response**"),[40] setting forth for the first time that its claim against the Debtor is based on the Collection Claims in the Collection Action and providing citations to the

---

[36] *See* POC, Part 2, pp. 9–10, 11–16.
[37] Dkt. No. 104.
[38] *See* Dkt. Nos. 160, 168.
[39] Claim Obj., p. 1.
[40] Dkt. No. 175.

463-page Claim Attachment alleged to support each of the Collection Claims.[41] The supporting references are to documents scattered throughout the Claim Attachment in no particular order.[42] The Debtor did not file a reply to SI's Claim Objection Response.

A hearing on the Claim Objection was held on February 6, 2024. Counsel made argument and representations on the record. At that hearing, the Court again addressed the Stay Relief Motion which, considering the Claim Objection, it had not yet ruled on. SI acknowledged that if the Court resolved the Claim Objection, the Stay Relief Motion as it pertained to the Debtor would be moot. At the conclusion of the hearing, the Court took both matters under advisement.

## III.    CONCLUSIONS OF LAW

### A.    The Claim Objection Must be Overruled.

The Debtor objects to SI's POC, asserting in relevant part that the POC evidences a claim against Spectrum, but not against it, and that any enforceable claim against it is barred as a matter of law by the doctrine of res judicata.[43] SI responds that its claim is allowable against the Debtor because the POC is prima facie evidence of a valid claim, the Debtor waived objections to Collection Claims that were not raised in the Claim Objection, and res judicata does not apply.[44] SI's position is without merit based on the law outlined in Parts 1 and 2 below, but for the reasons stated in Part 3, the Court concludes that SI nevertheless has an allowable claim against the Debtor.

---

[41] Claim Obj. Resp., pp. 2–3.
[42] *Id*.
[43] Claim Obj., pp. 1–2, 5–9. The Debtor also objects to the UVTA Claims. *Id*., pp. 2, 9–10. The Court will not address the UVTA Claims for the reasons stated below.
[44] Claim Obj. Resp., pp 15–33.

1.      <u>Allowance and Disallowance of Proofs of Claim</u>.

A claim is allowed in a Chapter 11 case if the claim is scheduled by the debtor as not being disputed, contingent or unliquidated, or if the creditor files a proof of claim against the debtor that is allowed under the Bankruptcy Code.[45] Proofs of claim are filed against a debtor pursuant to Section 501 of the Bankruptcy Code, using the procedures set forth in Rules 3001 through 3005 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"). A proof of claim, if allowed, gives the claimant distribution and voting rights in a Chapter 11 case.[46] In addition to rights afforded to the creditor, proofs of claim serve to make all those involved in the case aware of claims against the debtor's estate to, among other things, give parties in interest an opportunity to contest the claims.[47]

Section 502 of the Bankruptcy Code governs the allowance and disallowance of proofs of claim filed pursuant to Section 501. Under Section 502(a), a proof of claim "which is filed under section 501 . . . is deemed allowed, unless a party in interest . . . objects."[48] Thus, when no objection is made, distributions may be based on the face amount of the claim because the claim is deemed allowed under Section 502(a) and under Bankruptcy Rule 3001(f), the proof of claim is "prima facie evidence of the validity and amount of the claim."[49] This treatment of uncontested proofs of claim helps facilitate the speedy administration of bankruptcy estates.[50]

---

[45] Fed. R. Bank. P. 3003(a)(1), (c)(1)–(2). Filed proofs of claim supersede the debtor's scheduling of the claim. *Id.* 3003(c)(4).

[46] *See, e.g.*, 11 U.S.C. §§ 1126, 1129(b).

[47] *Liona Corp., Inc. v. PCH Associates (In re PCH Associates)*, 949 F.2d 585, 605 (2d Cir. 1991), *quoted in* 4 COLLIER ON BANKRUPTCY, ¶ 501.01 (Richard Levin & Henry J. Sommer eds., 16th ed.); *see* 11 U.S.C. § 502(b) (debtor and parties in interest may object to claims).

[48] 11 U.S.C. § 502(a).

[49] Fed. R. Bankr. P. 3001(f); *see Agricredit Corp. v. Harrison (In re Harrison)*, 987 F.2d 677, 680 (10th Cir. 1993); *In re Cluff*, 313 B.R. 323, 330 (Bankr. D. Utah 2004) (Boulden, J.).

[50] *Cluff*, 313 B.R. at 330.

Once an objection to a proof of claim is filed, however, Section 502(b) requires the court to determine whether the claim is allowable and the amount of the claim.[51] Section 502(b) states that subject to certain exceptions not relevant in this case, if an "objection to a claim is made, the court, after notice and a hearing, shall determine the amount of the claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that . . ." it is not allowable under subsections (1)–(9).[52] Objections to a proof of claim may be based on evidence and/or legal argument.[53] "Courts have no discretion to disallow claims for reasons beyond those stated in" Section 502(b)(1)–(9).[54]

2.    The Prima Facie Effect of a Proof of Claim and Burdens of Proof.

A proof of claim serves as evidence of a claim.[55] As noted above, Bankruptcy Rule 3001(f) states that a proof of claim will serve as "prima facie evidence of the validity and amount of the claim." To obtain prima facie status, however, Bankruptcy Rule 3001(f) expressly states that the claim must be "executed and filed in accordance" with the Bankruptcy Rules. Thus, a proof of claim that is not executed, does not conform to Official Form 410, or does not attach required supporting documents (or a summary of voluminous documents), is not entitled to prima facie effect.[56] Prima facie status also does not apply to proofs of claim that do not assert a claim against the debtor.[57]

---

[51] Bankruptcy courts may also grant relief from the automatic stay to allow a claim to be liquidated in another forum upon a showing of "cause," 11 U.S.C. § 362(d)(1), or estimate the claim if liquidation in any forum would "unduly delay the administration of the case[.]" *Id.* § 502(c).

[52] *Id.* § 502(b).

[53] *See, e.g.*, *Allen v. Geneva Steel Co. (In re Geneva Steel Co.)*, 260 B.R. 517, 524 (B.A.P. 10th Cir. 2001), *aff'd*, 281 F.3d 1173 (10th Cir. 2002).

[54] *Cluff*, 313 B.R. at 331.

[55] *Id.* at 330 & 332.

[56] *Wilson v. Broadband Wireless Int'l Corp. (In re Broadband Wireless Int'l Corp.)*, 295 B.R. 140, 145 (B.A.P. 10th Cir. 2003); *Cluff*, 313 B.R. at 331; *see* Fed. R. Bankr. P. 3001(a)–(d); *see also Harrison*, 987 F.2d at 680 ("properly filed" proof of claim is entitled to prima facie effect); *In re Fullmer*, 962 F.2d 1463, 1466 (10th Cir. 1992), *abrogated on other grounds*, *Raleigh v. Illinois Dep't. of Rev.*, 530 U.S. 15 (2000) (same).

[57] *Broadband Wireless*, 295 B.R. at 146.

Affording a proof of claim prima facie effect does not mean that it is presumed allowed under Section 502(b). Rather, prima facie status informs the burden of proof applicable to determining whether the asserted claim should be allowed or disallowed. Treating the proof of claim as prima facie evidence "simply means that all the facts in the claim are presumed to be true"[58] and thus–

> The objecting party has the burden of going forward with evidence supporting the objection. Such evidence must be of probative force equal to that of the allegations contained in the proof of claim. However, an objection raising only legal issues is sufficient. Once the objecting party has reached this threshold, the creditor has the ultimate burden of persuasion as to the validity and amount of the claim.[59]

Conversely, when a proof of claim is not entitled to prima facie effect, the claimant has the initial burden of proving that a claim exists and the amount of that claim. The claim must be disallowed if the claimant does not meet this initial burden. But, once a claim is established, the burden shifts to the objecting party to attack the validity and/or amount of the claim.[60] If the objecting party meets its burden, the claimant has the ultimate burden of proof as to the allowance its claim.[61]

3.    <u>The POC is Not Prima Facie Evidence of a Claim Against the Debtor, But SI has Established an Enforceable Claim</u>.

The Claim Objection requires the Court to determine under Section 502(b) whether SI has an allowable claim against the Debtor and if so, the amount of the claim. The Debtor

---

[58] *Cluff*, 313 B.R. at 337; *see id.* at 331 (the Bankruptcy Rules only inform the evidentiary effect of a proof of claim, and do not govern the allowance or disallowance of claims, which may be decided under Section 502(b)).
[59] *Geneva Steel*, 260 B.R. at 524 (internal citations omitted), *quoted in Broadband Wireless*, 295 B.R. at 145; *accord Fullmer*, 962 F.2d at 1466; *Cluff*, 313 B.R. at 337; *see also Harrison*, 987 F.2d at 680 (recognizing ultimate burden).
[60] *Broadband Wireless*, 295 B.R. at 145 (citing *Harrison*, 987 F.2d at 680; *Fullmer*, 962 F.2d at 1466); *Cluff*, 313 B.R. at 327–38.
[61] *Geneva Steel*, 260 B.R. at 524 (citing *Harrison*, 987 F.2d at 680); *Broadband Wireless*, 295 B.R. at 145.

maintains, presumably under Section 502(b), that the claim is not allowable because SI has not

established an enforceable claim against it based on the content of the POC and res judicata.[62] SI,

on the other hand, contends that the POC is allowable under Bankruptcy Rule 3001(f) because it

is prima facie evidence of a valid claim, the Debtor waived objections by not adequately

addressing the Collection Claims, and res judicata does not apply. Although SI's arguments on

the effect of its POC are flawed, SI has established an enforceable claim against the Debtor in the

amount of $1,427,620.47, and the Debtor has not met its burden of attacking the validity of that

claim. Thus, the Claim Objection must be overruled and SI's claim must be allowed.

a.   <u>The POC is Not Prima Facie Evidence of the Validity of SI's
Asserted Claim and Does Not Adequately Articulate the Claim.</u>

SI's POC is not prima facie evidence of a valid claim against the Debtor under

Bankruptcy Rule 3001(f) because although executed and filed on Official Form 410, the POC

does not establish any claim against the *Debtor*.[63] At most, the POC is prima facie evidence of

the validity and amount of the claim against *Spectrum*.

The Debtor also did not waive objections to the POC because with the exception

(perhaps) of the LPA Claim,[64] the basis for the Debtor's liability to SI is not plainly identified in

the POC and is not discernable from the 463-page hodgepodge of documents contained in the

Claim Attachment. To argue waiver, SI should have presented a proof of claim that sets forth the

basis for its claim on the face of the proof of claim or in a summary attached to the proof of

claim. Not having stated the basis, the "gotcha" approach urged by SI is without merit because

objecting parties are not required to articulate claims they think the claimant is making to avoid

---

[62] *See* 11 U.S.C. § 502(b)(1) (a claim is not allowable if it is "unenforceable against the debtor and property of the debtor, under any agreement or applicable law. . .").
[63] *See, e.g.*, *Broadband Wireless*, 295 B.R. at 145–46.
[64] *See* POC, p. 2, ¶ 8 (identifying LPA "Utah Code Ann. Section 48-2e-404(1)").

waiver. The Court understands that the parties have a history, and that the Debtor should have had knowledge that SI was basing its claim against it in this case on the Collection Claims asserted in the Collection Action. Such assumptions however cannot be read into a proof of claim. A proof of claim serves as evidence of the claim and should provide notice of the claim being made. At a minimum the proof of claim should articulate the basis of the claim asserted sufficient to allow the debtor and other parties in interest to discern whether it is objectionable. SI's POC did not serve this purpose.

Accordingly, the POC is not prima facie evidence of SI's asserted claim and the Claim Objection did not waive objections to the basis of the asserted claim. SI thus has the initial burden of proving a claim against the Debtor exists and the amount of the claim.

        b.     <u>The POC Must Be Allowed Because the Claim Objection Response Establishes an Enforceable Claim Against the Debtor And the Debtor Has Not Established a Basis to Disallow the Claim</u>.

The Claim Objection Response makes clear that SI is asserting the Collection Claims as the basis for an enforceable claim against the Debtor. The enforceability of the LPA Claim and the Assumption of Liability Claim have been demonstrated through the Claim Objection Response and therefore SI has met its initial burden of proving an allowable claim against the Debtor.[65] With an allowable claim having been proven, the burden shifts to the Debtor to attack the validity and amount of SI's claim. The Debtor has not met its burden and therefore, the POC must be allowed.

---

[65] Based on this conclusion, the Court need not address the UTVA Claims or the Alter Ego Claims.

i.    <u>SI Has an Allowable Claim Against the Debtor Based on the LPA Claim</u>.

SI asserts that it has an allowable claim against the Debtor because the Debtor is liable for the Spectrum Judgment under LPA Section 48-2e-404(1).[66] That Section states that, with certain exceptions, "all general partners are liable jointly and severally for all debts, obligations, and other liabilities of the limited partnership unless otherwise agreed by the claimant or provided by law."[67] It is undisputed that Spectrum is a limited partnership and that the Debtor is a general partner of the limited partnership.

SI has established that the Debtor is jointly and severally liable for all "debts, obligations and other liabilities" of Spectrum. The burden thus shifts to the Debtor to attack the validity of the LPA Claim. The Debtor's only argument is that the LPA Claim it is barred under principles of res judicata which, as the Court discusses below, is without merit. Thus, SI has an enforceable claim against the Debtor based on the LPA Claim which must be allowed under Section 502(b).

The LPA makes the Debtor jointly liable with Spectrum on the Spectrum Judgment as a matter of law. [68] The POC is prima facie evidence that SI has a valid claim against Spectrum in the amount of $1,427,620.47. The Debtor presented no evidence or argument disputing Spectrum's liability or the amount owed by Spectrum as of the Petition Date. Accordingly, SI's general unsecured claim is allowed under Section 502(b) in the amount of $1,427,620.47.

---

[66] Claim Obj. Resp., p. 2 (citing POC, p. 2 and Part 2, 4–16, 86–126).
[67] Utah Code Ann. § 48-2e-404(1).
[68] An order allowing SI's LPA Claim against the Debtor is akin to a judgment against the Debtor for purposes of LPA § 48-2e-405 and the Debtor has not argued otherwise. Accordingly, SI may collect the Spectrum Judgment from the Debtor as the holder of an allowed claim pursuant to applicable bankruptcy law.

ii.       SI Has an Allowable Claim Against the Debtor Based on
          the Assumption of Liability Claim.

The Claim Objection Response also demonstrates that the Debtor assumed liability for

the Spectrum Judgment,[69] based primarily on the Debtor's admission that it assumed the "debts

that Spectrum had with SI. . . ."[70] Through this admission SI has met its initial burden of

establishing the Assumption of Liability Claim against the Debtor. The burden thus shifts to the

Debtor to attack the validity and amount of the Assumption of Liability Claim. Like the LPA

Claim, the Debtor makes only the unmeritorious res judicata argument against the Assumption of

Liability Claim and it does not address the amount of the Claim. The Debtor therefore has not

met its burden of attacking the validity or the amount of SI's Assumption of Liability Claim and

the POC is allowed under Section 502(b) in the amount of $1,427,620.47 as discussed above.

iii.      Res Judicata Does Not Bar SI's LPA and Assumption of
          Liability Claims.

The Debtor maintains that the LPA Claim and the Assumption of Liability Claim

(collectively, the "**Present Claims**") are unenforceable against it because they are barred as a

matter of law by res judicata. Specifically, the Debtor argues that the Present Claims could have

and should have brought against the Debtor in the Breach Action. This argument is without

merit.

Whether a claim is barred by res judicata is a question of state law.[71] Utah separates res

judicata between claim preclusion and issue preclusion, which each have different elements.[72]

---

[69] Claim Obj. Resp., pp. 1–2 (citing Exh. 1, POC, p. 2 and Part 2, pp. 127–221, 223–226), and pp. 7–11 (citing Exhs. 1–2).

[70] *Id.* at p. 1 (quoting Exh. 1, Transcript at 111:14–114:4; 170:12–22). The Debtor also admitted that it was carrying SI's debts on its books. *See supra* note 31.

[71] *Oklahoma Packing Co. v. Oklahoma Gas & Elec. Co.*, 309 U.S. 4, 11 (1940).

[72] *See Oman v. Davis Sch. Dist.*, 2008 UT 70, ¶ 31, 194 P.3d 956, 965 (Utah 2008); *Macris & Associates, Inc. v. Neways, Inc.*, 2000 UT 93, ¶ 19, 16 P.3d 1214, 1219 (Utah 2000).

The parties in this case do not distinguish between claim and issue preclusion, but the pleadings and arguments exclusively argue the elements of claim preclusion, and therefore the Court considers only claim preclusion here.

To show that claim preclusion applies under Utah law, all of the following elements must be established: (1) both cases must involve the same parties or their privies; (2) the claim that is alleged to be barred must have been presented in the first suit or must be one that could and should have been raised in the first action; and (3) the first suit must have resulted in a final judgment on the merits.[73] None of these elements have been established in this case.

The Breach Action and the Present Claims do not involve the same parties or their privies. The Debtor, who is a party in this matter, was not a party to the Breach Action. Spectrum and the Debtor also are not in privity with one another under the "functional, fact-driven analysis" applicable in Utah[74] where a party in privity with another is one "so identified in interest with another that he represents the same legal right. . ." looking "mostly [at the parties'] relationship to the subject matter of the litigation."[75] Looking at the subject matter of the Breach Action and this matter involving the Present Claims, there is no "same legal right." The Breach Action against Spectrum was a breach of contract case involving a contract to which the Debtor was not a party.[76] While the Debtor was Spectrum's general partner, it is a wholly separate entity for purposes of liability and has its own defenses to liability for Spectrum's debts.[77] In the

---

[73] *Macris*, 16 P.3d at 1219.

[74] *Daz Mgmt., LLC v. Honnen Equip. Co.*, 2022 UT 15, ¶ 43, 508 P.3d 84, 93 (Utah 2022).

[75] *Press Publ'g, Ltd. v. Matol Botanical Int'l, Ltd.*, 2001 UT 106, ¶ 20, 37 P.3d 1121, 1128 (Utah 2001) (internal quotations and citations omitted).

[76] The Debtor's reliance on the statement that "subsequent litigation concerning the same subject matter [cannot be brought] against . . . partners . . ." is of no consequence. Claim Obj., pp. 6–7 (quoting *Press Publ'g*, 37 P.3d at 1128). While the Debtor is focusing on a reference to partners, the statement does nothing to change the standard as it says the subsequent litigation must involve the same subject matter.

[77] Utah Code Ann. § 48-2e-405(2) (judgment against a limited partner is not a judgment against the general partner, and a judgment must be obtained against the general partner); *id*. § 48-2e-405(3) (despite joint and several liability,

present matter, Spectrum's liability to SI under the Subcontract is not questioned; rather, the subject matter involves the Debtor's liability to SI for the uncontested Spectrum Judgment based on the Present Claims. Thus, Spectrum and the Debtor never represented the same legal right in the Breach Action and there is no privity.

The second element of claim preclusion also does not apply because the claim to be barred must have arisen "before the filing of the complaint in the first action[,]"[78] and (a) it must have been presented in that first action, or (b) could *and* should have been raised in the first action. Also, the claim in the first and second action must be identical, meaning that the two causes of action must rest on the same "facts and evidence."[79] The Present Claims, which are premised on the Debtor's liability for the Spectrum Judgment, did not arise prior to the filing of the Breach Action because Spectrum's liability had to be established before these Claims arose. Furthermore, the Present Claims were not presented in the Breach Action and are not identical since they involve different facts and evidence. Finally, although, arguably, the LPA Claim *could* have been brought in the Breach Action, there was no reason it *should* have been brought in that Action because the LPA provides for and, in fact, anticipates that a general partner of a judgment debtor will be sued in a separate action.[80]

Finally, the Spectrum Judgment is not a final judgment as to the Debtor because it is not a "declaration of law as to the respective rights and duties of the parties based on facts and evidence upon which the rights of recovery depend . . . ."[81] The Spectrum Judgment was not a

---

levy of general partner assets can only occur where liability has been found under § 48-2e-404 or the subsection provisions have been met).

[78] *Macris*, 16 P.3d at 1220.

[79] *Id*. at 1221.

[80] Utah Code Ann. § 48-2e-405(1) ("[A] general partner may be joined in an action against the limited partnership *or named in a separate action*.") (emphasis added)).

[81] *Peterson v. Armstrong*, 2014 UT App. 247, ¶ 14, 337 P.3d 1058, 1063 (Utah Ct. App. 2014).

declaration of law against the Debtor as a matter of law under the LPA[82] or as to the Assumption of Liability Claim which involves different facts.

For all the reasons stated above, the Debtor's claim of res judicata is without merit. SI has established an enforceable claim against the Debtor based on the LPA Claim or the Assumption of Liability Claim that must be allowed under Section 502(b) in the amount of $1,427,620.47.

### B.     The Stay Relief Motion Is Granted in Part Subject to Certain Conditions.

The Stay Relief Motion seeks relief from the stay imposed under Section 362(a) of the Bankruptcy Code for "cause" pursuant to Section 362(d)(1) with respect to two matters. *First*, SI seeks relief from stay to allow it "to complete its adjudication of its claims against the Debtor" in the Collection Action.[83] *Second*, SI believes that the automatic stay does not apply to the Non-Debtor Defendants and seeks a comfort order so stating, or alternatively, if the automatic stay does apply to the Non-Debtor Defendants, an order granting it relief from stay to pursue its UVTA Claims in the Collection Action.

The first request involving the Debtor is moot. There is no need for SI to return to state court to obtain a judgment against the Debtor because this Court has allowed SI's claim against the Debtor. Furthermore, SI admits that obtaining a judgment against the Debtor in the Collection Action is not necessary to pursue its UVTA Claims or to obtain judgment against the Non-Debtor Defendants in that Action.[84]

On the second request involving the Non-Debtor Defendants, the Court concludes that the pursuit of the UVTA Claims against those Defendants is stayed pursuant to Section

---

[82] Utah Code Ann. § 48-2e-405(2).
[83] Stay Relief Motion, p. 2.
[84] Stay Relief Motion, p. 13, 14; SI Supp. Brief, pp. 3–4.

362(a)(3), or must be stayed under Section 105(a). There is cause, however, to lift the stay based on the conditions outlined below.

1.    <u>The UVTA Claims Against the Non-Debtor Defendants Are Stayed</u>.

SI brings the UTVA Claims to collect the Spectrum Judgment from the Non-Debtor Defendants by avoiding Spectrum's Transfers to the Debtor and recovering the Transfers from the Non-Debtor Defendants as immediate or mediate transferees. SI maintains that the UTVA Claims are not stayed under Section 362(a) because the Non-Debtor Defendants did not seek relief under the Bankruptcy Code and the UVTA Claims against them are independent of the UVTA Claims against the Debtor.[85]

SI is correct that the automatic stay generally does not apply to non-debtors,[86] and that the UVTA Claims against the Non-Debtor Defendants are independent of the UVTA Claims against the Debtor.[87] Yet, this argument does not consider the *estate's* exclusive right under Section 544(b) of the Bankruptcy Code to avoid and recover transfers the Debtor made to the Non-Debtor Defendants for the benefit of all unsecured creditors. Taking Section 544(b) into account makes clear that SI's continued litigation of the UVTA Claims against the Non-Debtor Defendants in the Collection Action is stayed under Section 362(a)(3) of the Bankruptcy Code or must be stayed under Section 105(a) of the Bankruptcy Code.

The UVTA affords collection remedies to individual unsecured creditors. A creditor may satisfy its claim against a debtor by avoiding and recovering transfers made by the debtor to

---

[85] Stay Relief Motion, p. 13.
[86] *See, e.g.*, *Otoe Cty. Nat'l Bank v. W&P Trucking, Inc.*, 754 F.2d 881, 883 (10th Cir. 1985); *Fortier v. Dona Anna Plaza Partners*, 747 F.2d 1324, 1330 (10th Cir. 1984).
[87] *See, e.g.*, *Hafen v. Taylor*, No. 2:19-cv-00896-TC, 2021 WL 3194367, at *3, 2021 U.S. Dist. LEXIS 141975, at *6 (D. Utah July 28, 2021).

others. A single creditor's UVTA rights, however, are curtailed once the debtor files bankruptcy

due to the "strong arm powers" afforded to trustees or Chapter 11 debtors in possession under

Section 544(b) of the Bankruptcy Code.[88] Under this Section, the debtor in possession steps into

the shoes of the unsecured creditors and is authorized to invoke UVTA avoidance powers for the

benefit of all creditors.[89]

      The debtor in possession's UVTA avoidance rights under Section 544(b) are to the

exclusion of all creditors.[90] Affording the debtor exclusive rights under Section 544(b) facilitates

one of the core goals of bankruptcy – the equal distribution of assets to similarly situated

creditors.[91] "No creditor should be allowed 'to push its way to the front of the line of creditors'

by asserting individual state law avoiding rights."[92] Thus, state court UVTA actions by

individual creditors based on a debtor's prepetition transfers must be stayed either under Section

362(a)(3) or Section 105(a) of the Bankruptcy Code.

      Section 362(a)(3) states, with certain exceptions not applicable here, that the filing of a

bankruptcy petition "operates as a stay, applicable to all entities, of . . . any act to obtain

---

[88] This Section states that upon commencement of a bankruptcy case, the "trustee may avoid any transfer of an interest of the debtor in property . . . that is voidable under applicable law by a creditor holding" an allowed unsecured claim. 11 U.S.C. § 544(b)(1); *see id.* § 1107 (debtor in possession has powers of trustee).

[89] See 5 COLLIER ON BANKRUPTCY, ¶ 544.01 (Richard Levin & Henry J. Sommer eds., 16th ed.).

[90] *Hall v. Walter (In re Hall)*, No. 96-1542, 1998 WL 77746, at *4, 1998 U.S. App. LEXIS 2866, at *10 (10th Cir. Feb. 24, 1998); *Inland Boat Club, LLC v. Lee et al. (In re Inland Boat Club, LLC)*, Adv. Case No. 22-02071, 2024 WL 1337044, at *12, 2024 Bankr. LEXIS 769, at *29 (Bankr. D. Utah March 28, 2024) (Hunt, J.) (citing cases); *In re Hafen*, 640 B.R 581, 589 (Bankr. D. Utah) (Thurman, J.); *accord Sherwood Partners, Inc. v. Lycos, Inc.*, 394 F.3d 1198, 1203 (9th Cir. 2005) ("Bankruptcy law accomplishes equitable distribution through a distinctive form of collective proceeding" that includes the trustee's control of avoidance actions); *In re PWS Holding Corp.*, 303 F.3d 308, 314 (3d Cir. 2002) (same); *In re Berg*, 376 B.R. 303, 314 (Bankr. D. Kan. 2007) (same).

[91] *See Citicorp Acceptance Co., Inc. v. Robinson (In re Sweetwater)*, 884 F.2d 1323, 1328 (10th Cir. 1989) ("post-petition avoidance actions should be pursued in a manner that will satisfy the basic bankruptcy purpose of treating all similarly situated creditors alike" and one creditor cannot should be allowed to pursue avoidance actions for its "exclusive benefit"); *see also Delgado Oil Co., Inc. v. Torres*, 785 F.2d 857, 861–62 (10th Cir. 1986) (avoidance actions should be determined in the bankruptcy court "to satisfy the basic bankruptcy purpose of treating all similarly situated creditors alike."); *see, generally, Dalton Dev. Project #1 v. Unsecured Creditors Committee (In re Unioil)*, 948 F.2d 678, 682 (10th Cir. 1991) (recognizing goal of equitable distribution).

[92] *Inland Boat Club,* 2024 WL 1337044, at *12 (quoting *N.L.R.B. v. Martin Arsham Sewing Co.*, 873 F.2d 884, 887 (6th Cir. 1989)); *accord Sweetwater*, 884 F.2d at 1328.

possession of property of the estate . . . or to exercise control over property of the estate[.]" The term "property of the estate" is broadly defined to include "all legal or equitable interests of the debtor in property as of the commencement of the case . . . ."[93] Legal interests of the debtor includes exclusive claims held by the estate under Section 544(b) and the UVTA.[94] Thus, a single creditor's postpetition pursuit of a UVTA action based on a debtor's prepetition transfers, is an act to obtain possession of or exercise control over property of the estate.

Section 362(a)(3) also stays "any act to obtain possession . . . of property from the estate." Property held by the estate must include a debtor in possession's claims under Section 544(b) and the UVTA. A creditor's continued pursuit of a prepetition UVTA claim is an act to obtain possession of property from the estate.

When the Debtor filed its petition, therefore, it was afforded the exclusive right under Section 544(b) to avoid prepetition transfers under the UVTA for the benefit of all creditors, which includes its Transfers to the Non-Debtor Defendants that form the basis of SI's UVTA Claims in the Collection Action.[95] SI's continued pursuit of its UVTA Claims against the Non-Debtor Defendants in the Collection Action therefore is an act to obtain control of property of the estate or to obtain possession of property from the estate stayed under Section 362(a)(3).

---

[93] 11 U.S.C. § 541(a)(1).

[94] *See* 11 U.S.C. § 541(a)(1), (6) and (7); H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 367–68 (1977); S. Rep. No. 95-989, 95th Cong., 2d Sess. 82–83 (1978) (§ 541(a) includes "choses in action and claims by the debtor against others . . . ."); *accord Sweetwater*, 884 F.2d at 1327 (§ 544(b) actions are "claims of the estate"); *see United States v. Nordic Vill., Inc.*, 503 U.S. 30, 37 (1992) (right to recover under § 550 is a "claim" and "property of the estate"); *Delgado Oil*, 785 F.2d at 861 n.11 (shareholder derivative action is property of the estate). *Rajala v. Gardner*, 709 F.3d 1031 (10th Cir. 2013), holding that funds targeted for recovery through avoidance, but which have not been recovered, are not "property of the estate," does not require a different result. The Court expressly recognized that the parties were not contesting that "fraudulent transfer claims are included in the bankruptcy estate." *Id*. at 1039.

[95] Although the Debtor states that it will not pursue UVTA claims, it has agreed that its plan will propose that all these claims be vested in a trust administered by a separate trustee. *See supra* note 32.

Alternatively, the Court imposes a stay of SI's continued pursuit of UVTA Claims against the Non-Debtor Defendants under Section 105(a) of the Bankruptcy Code. That Section provides that Court "may issue any order that . . . is necessary or appropriate to carry out the provisions" of the Bankruptcy Code and "sua sponte actions and determinations" are authorized if they are "necessary or appropriate to . . . prevent an abuse of process."[96] Section 105(a) orders have been used to stay actions not stayed under Section 362(a) in appropriate settings.[97] Also, the Court of Appeals for the Tenth Circuit has recognized that injunctive relief may be appropriate if Section 362(a) does not operate to stay an action that could be damaging to the estate.[98] A stay under Section 105(a) is necessary and appropriate in this case to protect the estate's exclusive rights under Section 544(b).

> 2.    <u>Cause Exists to Lift the Stay as Conditioned by The Court</u>.

Section 362(d)(1) of the Bankruptcy Code states that "[o]n request of a party interest and after notice and a hearing, the court shall grant relief from stay provided under subsection (a) . . . , such as by terminating, annulling, modifying or conditioning such stay . . . for cause[.]" It is agreed that whether "cause" exists to allow litigation to continue in another tribunal requires consideration of the non-exclusive list of factors outlined in *In re Curtis*.[99] Applying the relevant *Curtis* factors, "cause" exists to lift the stay imposed under Section 105(a) or 362(a)(3) as conditioned below for at least two reasons.

*First,* the Non-Debtor Defendants are not debtors in this case and allowing SI to litigate the UVTA Claims against them subject to the conditions outlined below will have minimal

---

[96] 11 U.S.C. § 105(a).
[97] *See, e.g., Fisher v. Aposolou*, 155 F.3d 876 (7th Cir. 1998).
[98] *Rajala*, 709 F.3d at 1039.
[99] 40 B.R. 795, 806 (Bankr. D. Utah 1984) (Allen, J.), *cited with approval in Busch v. Busch (In re Busch)*, 294 B.R. 137, 141 (B.A.P. 10th Cir. 2003)). *See* Stay Relief Motion, pp. 6–11, 14; Stay Relief Obj., pp. 13–18.

impact on the estate and will not prejudice creditors or parties in interest in this case.[100] The

Debtor has no need to defend itself in the Collection Action because this Court has liquidated the

claim against it, and its involvement in the Action should be limited since fact discovery has

closed.

*Second*, SI will be unduly prejudiced if the Collection Action against the Non-Debtor

Defendants continues to be stayed. Spectrum breached the Subcontract and SI commenced suit

against it in 2018. That lawsuit was settled in 2019 when Spectrum entered into the SI/Spectrum

Settlement Agreement. Spectrum then breached the SI/Spectrum Settlement Agreement, and the

Spectrum Judgment was entered in February 2020. The Collection Action was commenced in

August 2020 and, as of the Petition Date, had been pending for almost three years. Fact

discovery has concluded, and except for expert discovery, the case is ready for trial. The

"balance of the hurt" therefore weighs in favor of SI.[101]

### 3.    <u>Conditions to Lifting of the Stay</u>.

Lifting the stay to allow SI to pursue the UVTA Claims against the Non-Debtor

Defendants is expressly conditioned on the following:

i.    SI may continue litigation of the UVTA Claims against the Non-Debtor

Defendants in the Collection Action *only to the extent* that it is seeking judgment avoiding

transfers made by the Debtor to the Non-Debtor Defendants prior to July 7, 2019. Transfers the

Debtor made prior to July 7, 2019 are not avoidable because they were made before the four-year

lookback period under UVTA, which is applicable under Section 544(b).[102] Although SI

---

[100] *Curtis*, 40 B.R. at 800.

[101] *Id*.

[102] *See* Utah Code Ann. § 25-6-305. *Cf. Hafen*, 640 B.R. at 589 (creditor could pursue UVTA claims during bankruptcy case because they had been abandoned by the trustee).

represents that the Transfers it seeks to avoid are prior to the four-year lookback period, documents it has submitted to the Court show otherwise. Transfers made by the Debtor to the Non-Debtor Defendants on or after July 7, 2019, however, are actionable by the debtor in possession or a successor and, therefore, SI is stayed from pursuing any of those transfers.

ii.      SI is stayed from taking actions to collect on any agreement involving the resolution of the UVTA Claims or any judgment it may be awarded against the Non-Debtor Defendants on the UVTA Claims. This stay is without prejudice to SI requesting further relief from this Court if believes that cause exists to allow it to take collection actions against the Non-Debtor Defendants. A further order is necessary to avoid the possible depletion of the Non-Debtor Defendants' assets before the Debtor's successor can determine whether there are claims against the Non-Debtor Defendants and is given an opportunity to potentially purse those claims for the benefit of SI and all other holders of allowed general unsecured claims in this case.

The above conditions are appropriate under Section 105(a) and Section 362(a) and (d).[103] They serve to recognize and preserve the Debtor's and any successor's exclusive rights under Section 544(b). Also, to the extent there are actionable claims against the Non-Debtor Defendants that are found to be valid, staying collection against the Defendants is necessary to preserve potential assets that may exist for the benefit of all creditors in this case.

## IV.    CONCLUSION

For the reasons stated above, the Debtor's Claim Objection is overruled. SI is allowed a general unsecured claim against the Debtor in the total amount of $1,427,620.47.

---

[103] *See* 11 U.S.C. § 362(d) (granting a request for relief from stay includes conditioning the stay).

SI's Stay Relief Motion is moot as it pertains to the Debtor and is denied in part and granted in part as it pertains to the Non-Debtor Defendants. The request for a comfort order, concluding that the stay does not apply to the Non-Debtor Defendants, is denied. However, the Stay Relief Motion is granted and SI may continue pursuit of its UVTA Claims against the Non-Debtor Defendants in the Collection Action as conditioned by the Court herein. The Court will enter separate Orders in accordance with Federal Rule of Civil Procedure 58, made applicable to this proceeding by Bankruptcy Rules 7058 and 9014.

**--END OF DOCUMENT--**

## <u>DESIGNATION OF PARTIES TO BE SERVED</u>

Service of the foregoing *MEMORANDUM OF OPINION* shall be served on the parties in the manner designated below:

**By Electronic Service**: The parties of record in this case, as identified below, are registered CM/ECF users.

- James W. Anderson    jwa@clydesnow.com, gmortensen@clydesnow.com
- Steven H. Bergman    steven-bergman@rbmn.com, info@bergmanesq.com,mariah-letts@rbmn.com
- Matthew James Burne    matthew.burne@usdoj.gov, James.Gee@usdoj.gov;Lindsey.Huston@usdoj.gov;Rinehart.Peshell@usdoj.gov;Rachelle.D.Hughes@usdoj.gov;Brittany.Dewitt@usdoj.gov
- Daniel C. Green    dan@racineolson.com, mcl@racinelaw.net
- John S. Gygi    john.gygi@sba.gov
- M. Darin Hammond    dhammond@smithknowles.com, astevenson@smithknowles.com
- Jason A. McNeill    mcneill@mvmlegal.com, coley@mvmlegal.com
- Mark O. Morris    mmorris@swlaw.com, wkalawaia@swlaw.com;csmart@swlaw.com;Docket_SLC@swlaw.com
- Brian M. Rothschild tr    brothschild@parsonsbehle.com, ecf@parsonsbehle.com,docket@parsonsbehle.com;ecf.alert+Rothschild@titlexi.com;cbmr11@trustesolutions.net
- United States Trustee    USTPRegion19.SK.ECF@usdoj.gov
- Aaron M. Waite    aaronmwaite@agutah.gov

**By U.S. Mail**: In addition to the parties receiving notice through the CM/ECF system, the following parties should be served notice pursuant to Fed. R. Civ. P. 5(b).

*None.*